UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

MECOS, S.r.L.,

                Plaintiff,

    -against-

GEORAL INTERNATIONAL, LTD. dba
GEORAL INTERNATIONAL aka GEORAL
INTERNATIONAL OF CALIFORNIA,
GEORAL INTERNATION OF NEW YORK,
INC. dba GEORAL INTERNATIONAL aka
GEORAL INTERNATIONAL OF
CALIFORNIA, GEORAL INTERNATIONAL
OF CALIFORNIA dba GEORAL
INTERNATIONAL,

                Defendant.
------------------------------------------------------------x

**MEMORANDUM & ORDER**
Case No. 03-CV-6249 (FB) (SMG)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ SEP 09 2005 ★

BROOKLYN OFFICE

*Appearances:*
*For the Plaintiff:*
DAVID W. BERENTHAL
Berenthal & Associates, P.C.
500 Fifth Avenue
Suite 2222
New York, NY 10110-2202

*For the Defendant:*
EDMOND J. PRYOR, ESQ.
1925 Williamsbridge Road
Bronx, NY 10461

**BLOCK, District Judge:**

        Plaintiff Mecos, S.r.L. ("Mecos") brought a breach-of-contract action against defendants Geroal International, Ltd., Geroal International of New York, Inc. and Geroal International of California (collectively, "defendants"). Defendants move to compel arbitration. For the following reasons, the Court grants the motion.

1

## BACKGROUND

This dispute arose after the defendants failed to tender payment to Mecos for forty specially-ordered security portals. The following facts are not in dispute.

### A. Distributorship Agreement

In December 1995, "Mecos S.p.A., of Bologna, Italy" and "Georal International of Whitestone, New York, U.S.A." entered into a Distributorship Agreement ("Agreement").[1] *See* Agreement at 1, att'd as Ex. A to Defs.' Notice of Mot. to Compel Arbitration ("Defs.' Notice").

### 1. Parties to Agreement

Mecos argues that none of the defendants have standing to enforce the Agreement because they were not signatories to the Agreement.

The Agreement stated that it was "between Mecos S.p.A., of Bologna, Italy ('Mecos') and Georal International of Whitestone, New York, U.S.A. ('Georal')." *See* Agreement at 1. With two exceptions, the Agreement, thereafter, referred to the parties as "Mecos" and "Georal": (1) Article XII provided that "notices . . . shall be sent . . . to: Mecos S.p.A. . . . [and] Georal International"; and (2) the Agreement was executed by Piero Zambuto ("Zambuto"), who was listed as the president of "Mecos S.p.A." and Alan J. Risi ("Risi"), who was listed as the president of "Georal International." *See id.* at

---

[1] In 2001, Mecos, S.p.A., a corporation, restructured to become Mecos S.r.L., a limited liability company. *See* Aff. of Piero Zambuto (Nov. 16, 2004) ¶ 6. Accordingly, Mecos S.r.L. has conceded that Mecos S.p.A. is a predecessor in interest of Mecos S.r.L. and thus subject to the Agreement if Mecos S.p.A. would be subject to it. *See* Mecos's Mem. of Law in Opp'n To Defs.' Mot. to Compel Arbitration ("Mecos's Mem.") at 1.

6-7.

## 2. Terms of the Agreement

The Agreement appointed Georal as a distributor of Mecos's products in the United States and Canada and set forth the terms of sales for those products. *See id.,* arts. I, VIII. The Agreement contained an arbitration provision, which provided:

> Should any problems, disagreements or disputes arise between Mecos and Georal in connection with this Agreement, the parties shall attempt to resolve all such matters on a friendly and business-like basis. If they should be unsuccessful they will each appoint a representative, familiar with their business to act as arbitrators. The two representatives will review the circumstances of the dispute and apply business principles to arrive at a resolution. The decision of the representatives will be binding.

*Id.,* art. XIII.

The Agreement set an initial term of three years, which expired well before the instant dispute occurred; however, it was renewable for additional two-year terms "upon agreement on the 'sales goals' for the new term, and unless either party decides not to renew, pursuant to the terms of ARTICLE IV[,]" which provided:

> The sole grounds for not renewing this Agreement shall be the failure of performance of the other part. The innocent party must give the non-performing party 90-days written notice of its failure to perform and a demand for proper performance. If the failure is not cured within the 90-day period, the innocent party may terminate the Agreement.

*See id.,* arts. III, IV. Although the parties never engaged in further negotiations of sales goals, *see* Aff. of Zambuto ¶ 9, the Agreement was never formally terminated by sending written notice of a party's non-performance. *See* Aff. of Pryor (Oct. 17, 2004) ¶

16, att'd to Defs.' Notice.

## B. Georal Entities

Risi is the sole shareholder and president of each of the defendants. *See* Aff. of Risi (Oct. 17, 2004) ¶ 1, attached to Defs.' Notice. Georal International, Ltd. was formed on October 24, 1995 for the express purpose of doing business with Mecos and engages in the sale of security portals. *See* Aff. of Pryor ¶ 14.

Georal International of New York, Inc. and Georal International California were formed in November 1999 and September 1999 respectively, subsequent to the date of the Agreement. *See* Aff. of Pryor ¶ 15.

## C. Litigation That Transpired Between the Filing of the Complaint and the Defendants' Notification of their Intent to Move to Compel Arbitration

Mecos filed the Complaint against the defendants on December 11, 2003 and served it on them on December 21, 2003. *See* Docket No. 1, 3-5. When the defendants failed to answer in a timely manner, Mecos filed a request with the Clerk of the Court to enter a default. *See* Aff. of David W. Berenthal (Nov. 17, 2004) ¶ 6. Thereafter, on January 26, 2004, the defendants filed an Answer and a Counterclaim. *See* Docket No. 6. On March 3, 2004, Mecos provided initial discovery in accordance with Fed. R. Civ. Pro. 26(a)(1). *See* Aff. of David W. Berenthal ¶ 7. On April 7, 2004, less than five months after the Complaint was filed, the defendants notified Mecos and the Court of their intention to move to compel arbitration. *See id.* ¶ 10. This motion ensued.

## DISCUSSION

In addition to Mecos's argument that the defendants were not signatories

4

to the Agreement and thus do not have standing to enforce the arbitration clause, Mecos argues that it is not subject to the clause because (1) the Agreement was abandoned; and (2) the defendants waived their right to invoke the clause because of their delay in invoking it.

**A. Standing**

The Court need not resolve whether the defendants were parties to the Agreement because even assuming *arguendo* that they were not, they may still compel arbitration pursuant to the Agreement. "[U]nder principles of estoppel, a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate a dispute where a careful review of the relationship among the parties, the contracts they signed . . . , and the issues that had arisen among them discloses that the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *JLM Industries, Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004) (internal citations and quotations omitted); *see also Astra Oil Co., v. Rover Navigation, Ltd.*, 344 F.3d 276, 279 (2d Cir. 2003); *Choctaw Generation Ltd. P'ship v. Am. Home Assurance Co.*, 271 F.3d 403, 406 (2d Cir. 2001); *Smith/Enron Cogeneration Ltd. v. Smith Cogeneration Int'l, Inc.*, 198 F. 3d 88, 98 (2d Cir. 1999).

> As the Second Circuit recently explained in *JLM Industries, Inc.*:
> 
> [I]n *Choctaw*, we found that where the merits of an issue between the parties was bound up with a contract binding one party and containing an arbitration clause, the tight relatedness of the parties, contracts and controversies was sufficient to estop the bound party from avoiding arbitration. Similarly, in *Smith/Enron Cogeneration Ltd.*

> *Partnership, Inc.*, we held that the party attempting to resist arbitration was estopped from doing so because it had treated arguably non-signatory companies and their signatory assignees as a single unit in its complaint in a related lawsuit. Most recently, in *Astra Oil Co.*, we found that petitioner Astra could hold respondent Rover to an arbitration clause to which Astra's affiliate AOT was also a signatory because of the close corporate and operational relationship between Astra and AOT, because the claims Astra brought against Rover arose under the agreement binding AOT and Rover to arbitration, and because in various respects Rover had treated Astra as a party to the agreement.

*JLM Industries, Inc.*, 387 F.3d at 177-78 (internal citations and quotations omitted).

Even assuming *arguendo* that Georal International, Ltd. and the Georal in the Agreement are separate entities, they certainly are very closely related, as both have the same president and sole shareholder, engage in the sale of security portals and do business with Mecos; also, as in *Choctaw*, Mecos's claims against Georal International, Ltd. – to recover payment owed as a result of the sale of security portals – are closely intertwined with the Agreement, which covered the distribution of Mecos's security portals. Therefore, Mecos is estopped from avoiding arbitration with Georal International, Ltd. even if it was not a signatory to the Agreement.

Similarly, Mecos is estopped from avoiding arbitration with the remaining defendants even though they were not in existence as of the date of the Agreement. The remaining defendants are closely intertwined with defendant Georal International, Ltd., as they all share the same president and sole shareholder. Furthermore, as in *Smith/Enron Cogeneration Ltd. Partnership, Inc.*, Mecos has treated them as a single unit in

6

its Complaint, alleging that each of the defendants failed to pay for the forty specially-ordered security portals and listing each of the defendants in the caption of the Complaint as doing business as the others.

**B. Abandonment**

The Court also need not resolve whether the parties have abandoned the Agreement because that is a matter for arbitration. Where, as here, "the arbitration clause is broad and arguably covers disputes concerning contract termination, arbitration should be compelled and the arbitrator should decide any claim that the arbitration agreement, because of substantive or temporal limitations, does not cover the underlying dispute." *McAllister Brothers, Inc. v. A&S Transportation Co.*, 621 F.2d 519, 522 (2d Cir. 1980). Arbitration need not be compelled only where, unlike here, it "cannot be reasonably construed to cover disputes over whether the contract was in force during the relevant period[.]" *Id.*

**C. Waiver**

Lastly, even though the defendants did not immediately move to compel arbitration, they have not waived their right to do so. The Second Circuit has explained:

> [W]aiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated. This Court has recognized two types of prejudice: substantive prejudice and prejudice due to excessive cost and time delay. Prejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or it can be found when a party too

> long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense.

*Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2002). Mecos has not suffered any substantive prejudice; thus, at issue is only whether the defendants have waived their rights to compel arbitration by virtue of any prejudice to Mecos due to excessive cost and time delay.

In regard to time delay, the Second Circuit "has refused to find waiver in a number of cases where delay in trial proceedings was not accompanied by substantial motion practice or discovery." *Thyssen, Inc.*, 310 F.3d at 105. Furthermore, "[i]ncurring legal expenses inherent in litigation, without more, is insufficient evidence of prejudice to justify a finding of waiver." *PPG Industries, Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir. 1997). Here, Mecos has not established sufficient prejudice based either expense or temporal delay because only five months elapsed between the time the Complaint was filed and the time the defendants notified Mecos and the Court of their intention to move to compel arbitration, and during that time, motion practice was limited to a single request to the Clerk of the Court to enter default, and discovery was very limited in scope. *See Thyssen, Inc.*, 310 F.3d at 105 (no prejudice even though more than a year and a half elapsed between the filing of the complaint and defendant's assertion of its right to arbitrate, and despite expense incurred by plaintiff's moving for summary judgment); *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 122 (2d Cir. 1991) (no waiver despite three-year delay); *PPG Industries, Inc.*, 128 F.3d at 108

8

("five-month delay, by itself, is not enough to infer waiver of arbitration").

## CONCLUSION

The defendants' motion to compel arbitration is granted.

**SO ORDERED.**

FREDERIC BLOCK
United States District Judge

Dated: August 25, 2005
       Brooklyn, New York